**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **VANCO INTERNATIONAL LLC and**<br>**JDA TECHNOLOGIES LLC**<br><br>                    **PLAINTIFFS,**<br><br>    **VS.**<br><br>**BEALE STREET AUDIO INC.,**<br>**BSA FULMER, LLC D/B/A BEALE**<br>**STREET AUDIO, and**<br>**AFCO INC.,**<br><br>                    **DEFENDANTS.** | **CASE NO. 17-861**<br><br>**JUDGE:**<br><br>**MAGISTRATE JUDGE:**<br><br><br>    JURY DEMANDED |

**COMPLAINT**

Plaintiffs, Vanco International LLC ("Vanco") and JDA Technologies LLC ("JDA") complain against Defendants, Beale Street Audio, Inc., ("Beale"), BSA Fulmer, LLC d/b/a Beale Street Audio ("BSA") and AFCO Inc. ("AFCO") (collectively "the Defendants"), and state:

**NATURE OF THE ACTION**

1.      This is an action arising under the patent laws of the United States, 35 U.S.C. § 271 *et seq.* and is brought against Defendants for their infringement of U.S. Patent No. 8,925,676 ("the '676 Patent"); and under the trademark laws of the United States, 15 U.S.C. § 1051 *et seq.* and is brought against Defendants for their unfair competition and infringement of U.S. Trademark Registration No. 4,823,007. This is also action arising under Illinois law, and is brought against Defendants for deceptive trade practices in violation of 815 ILCS 510; and under the common law of Illinois for unfair competition and trademark infringement.

1

## PARTIES

2.      JDA is a Florida limited liability company with its principal place of business in Orlando, Florida and owner of the '676 Patent.

3.      Vanco is an Illinois limited liability company with its principal place of business in Batavia, Illinois. Vanco manufactures and sells products used in connection with audio visual systems.

4.      Beale is a Tennessee corporation with its principal place of business in Memphis, Tennessee. Beale manufactures, imports, offer for sale and/or sells audio speakers, amplifiers, and related products.

5.      BSA Fulmer, LLC is a Tennessee limited liability company with its principal place of business in Memphis, Shelby County, Tennessee that purports to do business as Beale Street Audio. BSA manufactures, imports, offer for sale and/or sells audio speakers, amplifiers, and related products.

6.      AFCO is a Tennessee corporation, with its principal office at 122 Gayoso Avenue, Suite 100 Memphis, Tennessee 38103. AFCO manufactures, imports, offer for sale and/or sells audio speakers, amplifiers, and related products.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a); 15 U.S.C. § 1121; and 28 U.S.C. § 1332 as none of the Plaintiffs, including their respective members, are citizens of same States as any of the Defendants and the amount in controversy is in excess of $75,000 exclusive of interests and costs.  This Court has jurisdiction over the state law and common law claims in this action pursuant to 28 U.S.C. §1367(a) because

the state law and common law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

8.      This Court has personal jurisdiction over Defendants in that Defendants have committed and continue to commit acts of infringement in this Judicial District in violation of 35 U.S.C. § 271 and 15 U.S.C. § 1114 by, among other things purposefully, advertising, offering and selling infringing products into the stream of commerce with the knowledge or understanding that such products will be sold and used in this Judicial District.  Defendants have conspired to transport, have cooperated to transport and have caused to be transported infringing products into Illinois and this judicial district, and have supplied infringing products to distributors in Illinois and this judicial district, with the full knowledge and intent that the Defendants' infringing products are sold in Illinois and this judicial district.

9.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c) and 28 U.S.C. § 1400(b).

## FACTUAL ALLEGATIONS

### *The '676 Patent and Sonic Vortex Trademark*

10.     The subject matter of the '676 Patent was invented by Jimmy Lee Murray ("Murray"). Murray is the manager and principal owner of JDA.

11.     Generally, the '676 Patent provides, *inter alia*, an improved ported enclosure for an audio speaker that delivers significantly more bass and a flatter frequency response by separating the main port of the enclosure into multiple sections called "fins" that channel through the wall of the enclosure. The fins compress and move air at a high velocity without port noise, providing improved sound.

3

12.     The '676 Patent has a wide range of uses in connection with audio speakers, including, but not limited to headphones, car and marine speakers, architectural speakers and table speakers.

13.     On June 7, 2012, Murray filed U.S. Provisional Patent Application Ser. No. 61/656,658 to which the '676 Patent claims benefit.

14.     On June 7, 2013, Murray filed U.S. Non-Provisional Utility Patent Application Ser. No. 13/912,251, which issues as the '676 Patent.  At about this time of filing, Murray created a name, *Sonic Vortex*, and design to identify the audio speaker technology developed according to the '676 Patent.

15.     On February 28, 2014, JDA applied to the U.S. Patent and Trademark Office ("USPTO") to register *Sonic Vortex* and design (the "Sonic Vortex Mark") as a trademark and was assigned Serial Number 86/207,512 to its application.

16.     On December 5, 2014, Murray assigned all of his rights, title, and interest to U.S. Provisional Patent Application Ser. No. 61/656,658 and in the '676 Patent to JDA. This assignment was recorded in the records of the U.S. Patent and Trademark Office on December 11, 2014.

17.     On January 6, 2015, the United States Patent and Trademark Office duly and legally issued the '676 Patent to JDA. (Exhibit A hereto).  JDA has continuously owned the '676 Patent since its issuance on January 6, 2015.

18.     On September 29, 2015 the USPTO duly and legally granted and issued registration of the Sonic Vortex mark and design created by Murray as a trademark of JDA to identify audio speaker enclosures and audio speakers under Registration Number 4,823,007 ("Sonic Vortex Trademark").  (Exhibit B hereto).

4

19.     On August 17, 2016, JDA granted Vanco, and Vanco presently holds, an exclusive, worldwide license to all substantive rights in the '676 Patent for all fields ("Exclusive License").

20.     On August 17, 2016, JDA assigned its ownership of the Sonic Vortex Trademark to Vanco.  This assignment was recorded in the records of the U.S. Patent and Trademark Office on January 12, 2017.

*__Arthur Fulmer and the Defendants__*

21.     In the spring of 2013, Murray was seeking opportunities for commercializing the '676 Patent under the name Sonic Vortex.

22.     Arthur Fulmer III ("Fulmer") is a resident of Memphis, Tennessee. Fulmer owns and operates an array of businesses, including businesses that manufacture and sell audio speakers and related accessories.  Upon information and belief, Fulmer owns and operates all three of the Defendants.

23.     On or about August 10, 2013, Murray met Fulmer for the first time to introduce and discuss a potential business opportunity relating to the use of the '676 Patent in architectural audio speakers under the Sonic Vortex name ("Sonic Vortex Speakers").

24.     Fulmer, who has over 50 years of experience in the audio industry, immediately recognized the commercial value in the Sonic Vortex Speakers, and proposed that he and Murray enter into a joint venture that would make, market and sell the Sonic Vortex Speakers.

25.     On August 23, 2013, Fulmer provided Murray a document titled Memorandum of Understanding, which described a proposed business arrangement for this new venture. Following further discussions, Murray and Fulmer reached consensus on a final draft, which Murray signed on August 26, 2013, a copy of which is attached as Exhibit C ("2013 MOU").

5

26. The 2013 MOU provided, among other provisions, the new venture would utilize and operate under AF West Inc., an existing entity under Fulmer's control, which would (a) be renamed at a later date, (b) be owned equally by Fulmer and Murray; and (c) license and pay a royalty for the Sonic Vortex technology. The 2013 MOU additionally described Fulmer and Murray's roles and responsibilities. Murray would manage and direct the design, quality, marketing and sales of the Sonic Vortex Speakers; and Fulmer through one or more of his businesses, would provide financing for the venture and manage manufacturing and distribution of the Sonic Vortex Speakers, and the business administration, accounting and banking for the new venture.

*27.* In September 2013, Murray proposed that rather than utilize AF West Inc. for the venture, that a new entity be formed, which he further proposed be named Beal Street Audio Inc. Fulmer agreed, and on December 23, 2013, Fulmer caused Beale Street Audio Inc. to be formed under the laws of Tennessee.

28. Fulmer selected a manufacturer in China, with whom he, through his other businesses had an ongoing relationship, to serve as a source for the manufacturing of Sonic Vortex Speakers ("Fulmer's Manufacturer"). After the 2013 MOU was signed, and over the course of several months thereafter, Murray made several trips to China to meet with and provide Fulmer's Manufacturer with the detailed drawing, specifications, technology processes and other information to manufacture the Sonic Vortex Speakers according to the '676 Patent.

29. Also, starting in September 2013, Murray commenced promotional and sales activities for the new venture. As the production of the Sonic Vortex Speakers was underway, Murray secured Beale's first order for Sonic Vortex Speakers in June 2014.

6

30. With the permission of JDA, in September 2014, Beale began selling the Sonic Vortex Speakers under the Sonic Vortex mark.

31. At least the following Sonic Vortex Speakers of the Defendants were manufactured according to the specification of the '676 patent and are commercial embodiments of the '676 patent ("accused products"):

| Model Number | Name/Description |
|---|---|
| IPLCR4-BB | PanCake In-Wall Dual 4inch Carbon Fiber. 1inch Titanium Dome |
| P4-BB | 70mm 4 inch Carbon Fiber and Titanium Tweeter |
| IC6-B | In Ceiling 6.5" 2-way with 1" Silk Dome |
| IC6-MB | In Ceiling 6.5" 2-way with 1" Aluminum Dome |
| IC6-BB | In Ceiling 6.5" 2-way with 1" Titanium Dome |
| IC8-B | In Ceiling 8" 2-way with 1" Silk Dome |
| IC8-BB | In Ceiling 8" 2-way with 1" Titanium Dome |
| ICA6-B | In Ceiling Angled 6.5" with 1" Silk Dome |
| ICA6-MB | In Ceiling Angled 6.5" with 1" Aluminum Dome |
| ICA6-BB | In Ceiling Angled 6.5" with 1" Titanium Dome |
| ICW4-MB | In Ceiling or In Wall 4" 2-way ¾" Aluminum Dome |
| ICW6-MB | In Ceiling or In Wall 6.5" 2-way, 1" Aluminum Dome |
| ICS6-MB | 6.5" In Ceiling Subwoofer Kevlar Driver |
| ICS8-MB | 8" In Ceiling Subwoofer Kevlar Driver |

Attached hereto as Exhibit D are current webpages from Defendants' website http://beale-streetaudio.com/ for these accused products.

| Model Number | Name/Description |
|---|---|
| BXC650 | In Ceiling 6.5" 2-Way |
| BXC800 | In Ceiling 8" 2-Way |
| BXCA650 | In Ceiling 6.5" 2-Way |
| BXCW401 | 4" In Ceiling/In Wall 2-Way |
| BXCW651 | 6.5" In Ceiling/In Wall 2-Way |
| BXP401 | Pancake Speaker 4 inch 1 inch ALU Dome |
| TU401 | Ultra Shallow 4 inch 1 inch ALU Dome 70V |
| BXCS650 | In Ceiling 6.5" Subwoofer |
| BXCS800 | In Ceiling 8" Subwoofer |

Attached hereto as Exhibit E are current webpages from Defendants' website http://www.bsaxpress.com/ for these accused products.

32.     Throughout 2014, Murray repeatedly requested Fulmer to provide him documentation showing his ownership in Beale. Fulmer ignored these requests.

33.     Throughout 2014, Murray, on behalf of JDA made repeated requests of Fulmer and Beale to negotiate and enter into a written licensing agreement with JDA for the '676 patent and Sonic Vortex mark. To this end, Murray on numerous occasions provided Fulmer and Beale with a proposed Field of Use Patent and Trademark License Agreement bearing terms that were consistent with their prior discussions. Fulmer and Beale however made no effort to advance the making of a written licensing agreement.

34.     Murray's growing frustration and dissatisfaction over Fulmer and Beale's failure to address his requests became plainly apparent to Fulmer, who in an effort to placate Murray, presented him on October 2, 2014 with a new Memorandum of Understanding ("2014 MOU") under the auspices that it was to replace the 2013 MOU. Although the 2014 MOU expressly provided it was "a non-binding memorandum of understanding intended only to outline a revised proposal for the structure and operation of the Sonic Vortex endeavor," it reaffirmed the parties' intent for Beale to enter into a licensing agreement with JDA for the '676 patent and Sonic Vortex mark, and to pay JDA a royalty therefor. A copy of the 2014 MOU is attached as Exhibit F.

35.     Over the next five months, Fulmer dodged any attempt by Murray to advance a licensing agreement between Beale and JDA.

36.     By January 2015, AFCO was importing and Beale was filling significant orders of Sonic Vortex Speakers with the distribution partners set up by Murray.

37.     By March 2015, the Sonic Vortex Speakers had been successfully established and integrated into the market. It was at about this time that Beale finally presented Murray with a written licensing agreement for JDA and an employment agreement for Murray.   These agreements were wholly inconsistent from any prior discussions, and showed that Fulmer had no

intention of honoring any previously discussed terms. When Murray protested, Fulmer informed him the terms in the agreements were not negotiable. Murray and JDA refused to accept or sign the agreements.

38.　　Thereafter, Murray's role in Beale became more and more limited, and his communications to Fulmer and his associates were generally ignored.

39.　　By fall of 2015, Murray had honed Beale's manufacturing processes to optimum quality and efficiency levels, and through his contacts in the audio industry, established a global network of distributors and sales representatives to promote and advance sell Sonic Vortex Speakers. Despite all this, (a) Beale had neither entered into a licensing agreement with JDA or paid it royalties as contemplated, (b) Murray was still without any information or documentation confirming his ownership interest in Beale, and (c) Fulmer formed a new company, BSA, to essentially takeover the business operations of Beale. At this juncture, neither Fulmer nor the Defendants needed Murray, and in September 2015, purported to fire Murray from any and all positions he held with Beale.

40.　　In response, JDA withdrew its permission for Defendants to use the Sonic Vortex mark and to make, use, sell, offer for sale and/or import products under the '676 patent.

41.　　On September 23, 2015, Fulmer, Beale and BSA sued Murray and JDA in the United States District Court for the Western District of Tennessee, case number 2:15cv2623, attempting to force a license under the '676 patent and the Sonic Vortex mark ("prior lawsuit"). After a settlement conference on December 17, 2015, it became clear that Fulmer, Beale and BSA had no reasonable basis for their claims in prior lawsuit, and they voluntarily dismissed the lawsuit on February 1, 2016.

42.     No written license agreement for either the '676 patent or the Sonic Vortex mark was ever entered into between Fulmer or any of the Defendants and JDA or Murray.

43.     Rather than ceasing and desisting from using the Sonic Vortex mark and from making, using, selling, offering for sale and/or importing products under the '676 patent, Fulmer and the Defendants have conspired to, have cooperated to and have continued to make, use, offer for sale, sell and/or import products under the Sonic Vortex mark and under the '676 patent, knowing they no longer had or have permission or authorization to do so. Such continued and ongoing actions by the Defendants constitute willful trademark and patent infringement.

44.     On February 4, 2016, JDA's counsel sent the Defendants' counsel a letter putting the Defendants on formal notice of their infringement of the Sonic Vortex mark and the '676 patent (Exhibit G hereto).

45.     Despite such formal notice of patent and trademark infringement, the Defendants continue to willfully infringe the Sonic Vortex mark and the '676 patent, by making, using, offering for sale, selling and/or importing unauthorized, counterfeit Sonic Vortex speakers made according to the specification of the '676 patent.

46.     Upon information and belief, the Defendants have made no change to the accused products and have made no effort to try to avoid infringement.

## COUNT I

### Patent Infringement of the '676 Patent

47.     Plaintiffs repeat and reallege paragraphs 1-46 as though fully stated herein.

48.     On January 6, 2015, United States Patent No. 8,925,676 ("the '676 patent"), entitled "Ported audio speaker enclosures," was duly and legally issued.  Jimmy Lee Murray is the named inventor of the subject matter claimed in the '676 patent and, as of the date of the

issuance of the '676 patent, had assigned his entire interest in the '676 patent to JDA. A true and correct copy of the '676 patent is attached hereto as Exhibit A.

49. Defendants have been and still are infringing the '676 patent by the unauthorized making, using, importing, offering for sale, and/or selling of the accused products which infringe the claims of the '676 patent.

50. As a representative example, Defendants' IPLCR4-BB DUAL 4" IN WALL LCR 2-WAY PANCAKE speakers are one of Defendants' accused products which infringe the claims of the '676 patent. Attached hereto as Exhibit H is a spec sheet of this accused product. Upon information and belief, all references therein to Defendants' products being patented or "Multiple International Patents Awarded," "Additional Patents Pending" or "patented enclosure" refer to the '676 patent and Plaintiff's related foreign patents or patent applications.

51. Using the aforesaid representative example, the following is a claim chart detailing how Defendants' accused products infringe the claims of the '676 patent. Each pictured part of the exemplary accused product is the literal element of the referenced claim language and was specifically designed and manufactured according to the specification of the '676 Patent while Murray was working with Fulmer's Manufacturer to produce:

| Claim 1 | IPLCR4-BB DUAL 4" IN WALL LCR 2-WAY PANCAKE speakers |
|---|---|
| [1.0] An audio speaker enclosure comprising: | Defendants' spec sheet discloses (Ex. E, p. 2) the following: **Sonic Vortex Enclosure -** The Sonic Vortex Enclosure is a tuned, sealed enclosure that captures driver backside air compression and redirects air movement to the fins, via the Sonic Vortex Airgate. |

| | |
|---|---|
| |  |
| [1.1] an enclosure housing defining an internal volume with a speaker opening at a first end thereof, the speaker opening being configured to receive a speaker therein, | Defendants' spec sheet discloses (Ex. E, p. 2) the following:<br><br>**Sonic Vortex Speaker -** Innovative speaker design that produces great sound in a patented enclosure. …Sonic Vortex speakers assure consistent performance in stereo and multi-channel systems…<br><br><br><br>Captured, compressed air from driver movement travels through the fins encircled by the Sonic Vortex Enclosure. The captured air gets redirected, preventing sound bleed to an adjacent room.<br><br> |
| [1.2] the enclosure housing having an inner surface facing the internal volume and an outer surface, the enclosure further defining at least two ports communicating between the internal volume and the outer surface, the at least two ports extending between the inner and outer surfaces along a port length that is greater than a maximum housing thickness between the inner and outer surfaces; | Defendants' spec sheet discloses (Ex. E, p. 2) the following:<br><br>**Sonic Vortex Enclosure -** The Sonic Vortex Enclosure is a tuned, sealed enclosure that captures driver backside air compression and redirects air movement to the fins, via the Sonic Vortex Airgate.<br><br>**Sonic Vortex Airgate -** The Vortex Airgate is the eye of the storm. Driver backside air compression passes through the tuned port (hole |

| | in the middle) and gets separated into multiple ported transmission lines (fins). |
| | **Sonic Vortex Fins -** The Fins are encircled by and sealed to the inside of the Enclosure. These air channels are specially tuned for length and volume to perfectly neutralize air pressure, balancing energy transfer to the external cabinet, eliminating external vibration. **Sonic Vortex Dispersion Ports -** The redirected air from driver movement exits the front ported enclosure at multiple positions….  The captured air travels through the fins and exits out of the ports on the front of the enclosure….  |
| [1.3] wherein each of the at least two ports includes a first port section, extending towards a perimeter of the enclosure housing between the inner and outer surfaces at a second end of the internal volume opposite the first end, and |  |
| [1.4]  a second port section, extending between the inner and outer surfaces from the first port section at the perimeter, winding at least partially around a perimeter of the enclosure housing toward the outer surface. | |

| Claim 2 | IPLCR4-BB DUAL 4" IN WALL LCR 2-WAY PANCAKE speakers | |
|---|---|---|
| [2.0] The audio speaker enclosure of claim 1, wherein each of the at least two ports has an inlet at the second end. |  | |

| Claim 3 | IPLCR4-BB DUAL 4" IN WALL LCR 2-WAY PANCAKE speakers | |
|---|---|---|
| [3.0] The audio speaker enclosure of claim 2, wherein each of the at least two ports has an outlet at the first end. |  | |

| Claim 4 | IPLCR4-BB DUAL 4" IN WALL LCR 2-WAY PANCAKE speakers | |
|---|---|---|
| [4.0] The audio speaker enclosure of claim 2, wherein each of the at least two ports begins at a common inlet plenum defined at the second end. |  | |

| Claim 5 | IPLCR4-BB DUAL 4" IN WALL LCR 2-WAY PANCAKE speakers | |
|---|---|---|
| [5.0] The audio speaker enclosure of claim 1, wherein the enclosure housing includes an inner shell and an outer shell, the at least two ports being defined between the inner and outer shells. |  | |

| Claim 6 | IPLCR4-BB DUAL 4" IN WALL LCR 2-WAY PANCAKE speakers |
|---|---|
| [6.0] The audio speaker enclosure of claim 5, wherein a plurality of port walls extend between the inner and outer shells, the at least two ports being defined therebetween. |  |

| Claim 7 | IPLCR4-BB DUAL 4" IN WALL LCR 2-WAY PANCAKE speakers |
|---|---|
| [7.0] The audio speaker enclosure of claim 6, wherein, for each of the at least two ports, the first port section extends between the inner and outer shells at the second end of the internal volume opposite the first end, and |  |
| [7.1] the second port section extends between the inner and outer shells winding at least partially around the perimeter. |  |

| Claim 8 | IPLCR4-BB DUAL 4" IN WALL LCR 2-WAY PANCAKE speakers |
|---|---|
| [8.0] The audio speaker enclosure of claim 7, wherein the plurality of port walls of the first port section are formed integrally with the outer shell and |  |
| [8.1] the plurality of port walls of the second port section are formed integrally with the inner shell. |  |

| Claim 9 | IPLCR4-BB DUAL 4" IN WALL LCR 2-WAY PANCAKE speakers |
|---|---|

| | |
|---|---|
| [9.0] The audio speaker enclosure of claim 7, wherein the audio speaker enclosure further includes an end plate arranged between the inner and outer shells at the second end, the end plate having a central opening communicating between the internal volume and the first section and at least two perimetric openings communicating, respectively for each of the at least two ports, between the first port section and the second port section. |  |

| | |
|---|---|
| Claim 10 | IPLCR4-BB DUAL 4" IN WALL LCR 2-WAY PANCAKE speakers |
| [10.0] The audio speaker of claim 5, wherein the audio speaker enclosure further includes an end cap arranged at the first end surrounding the speaker opening and bridging the inner and outer shells. |  |

| | |
|---|---|
| Claim 11 | IPLCR4-BB DUAL 4" IN WALL LCR 2-WAY PANCAKE speakers |
| [11.0] The audio speaker of claim 10, wherein the end cap defines an outlet for each of the at least two ports. |  |

| | |
|---|---|
| Claim 12 | IPLCR4-BB DUAL 4" IN WALL LCR 2-WAY PANCAKE speakers |
| [12.0] The audio speaker of claim 10, wherein the end cap includes at least one pivotable ceiling mount support. | <br>[The green tabs in the pictures are the pivotable |

| | ceiling mount supports.] |

| Claim 13 | IPLCR4-BB DUAL 4" IN WALL LCR 2-WAY PANCAKE speakers |
|---|---|
| [13.0] An audio speaker enclosure comprising: | Defendants' spec sheet discloses (Ex. E, p. 2) the following:<br><br>**Sonic Vortex Enclosure -** The Sonic Vortex Enclosure is a tuned, sealed enclosure that captures driver backside air compression and redirects air movement to the fins, via the Sonic Vortex Airgate.<br><br> |
| [13.1] an enclosure housing defining an internal volume with a speaker opening at a first end thereof, the speaker opening being configured to receive a speaker therein, | Defendants' spec sheet discloses (Ex. E, p. 2) the following:<br><br>**Sonic Vortex Speaker -** Innovative speaker design that produces great sound in a patented enclosure. …Sonic Vortex speakers assure consistent performance in stereo and multi-channel systems…<br><br><br><br>Captured, compressed air from driver movement travels through the fins encircled by the Sonic Vortex Enclosure. The captured air gets redirected, preventing sound bleed to an adjacent room. |

17

| | |
|---|---|
| |  |
| [13.2] the enclosure housing having an inner surface facing the internal volume and an outer surface, the enclosure further defining at least one port communicating between the internal volume and the outer surface, the at least one port extending between the inner and outer surfaces along a port length that is greater than a maximum housing thickness between the inner and outer surfaces; | Defendants' spec sheet discloses (Ex. E, p. 2) the following:<br>**Sonic Vortex Enclosure -** The Sonic Vortex Enclosure is a tuned, sealed enclosure that captures driver backside air compression and redirects air movement to the fins, via the Sonic Vortex Airgate.<br>**Sonic Vortex Airgate -** The Vortex Airgate is the eye of the storm. Driver backside air compression passes through the tuned port (hole in the middle) and gets separated into multiple ported transmission lines (fins).<br>**Sonic Vortex Fins -** The Fins are encircled by and sealed to the inside of the Enclosure.<br>These air channels are specially tuned for length and volume to perfectly neutralize air pressure, balancing energy transfer to the external cabinet, eliminating external vibration.<br>**Sonic Vortex Dispersion Ports -** The redirected air from driver movement exits the front ported enclosure at multiple positions….<br><br>The captured air travels through the fins and exits out of the ports on the front of the enclosure…. |

| | |
|---|---|
| |  |
| [13.3] wherein the at least one port includes a first port section, extending circuitously towards a perimeter of the enclosure housing between the inner and outer surfaces and first port section walls at a second end of the internal volume opposite the first end, and |  |
| [13.4] a second port section, extending between the inner and outer surfaces from the first port section at the perimeter, winding at least partially around a perimeter of the enclosure housing toward the outer surface. |  |

| Claim 14 | IPLCR4-BB DUAL 4" IN WALL LCR 2-WAY PANCAKE speakers |
|---|---|
| [14.0] The audio speaker enclosure of claim 13, wherein the at least one port comprises a plurality of ports. |  |

| Claim 15 | IPLCR4-BB DUAL 4" IN WALL LCR 2-WAY PANCAKE speakers |
|---|---|
| [15.0] The audio speaker enclosure of claim 14, wherein the plurality of ports begin at a common inlet plenum defined between the inner and outer surfaces and the second end of the interval volume. | |

| Claim 16 | IPLCR4-BB DUAL 4" IN WALL LCR 2-WAY PANCAKE speakers |
|---|---|

| | |
|---|---|
| [16.0] The audio speaker of claim 13, wherein the audio speaker enclosure further includes an end cap arranged at the first end surrounding the speaker opening, bridging the inner and outer surfaces and defining an outlet for the at least one port. |  |

| Claim 17 | IPLCR4-BB DUAL 4" IN WALL LCR 2-WAY PANCAKE speakers |
|---|---|
| [17.0] An audio speaker enclosure comprising: | Defendants' spec sheet discloses (Ex. E, p. 2) the following:<br>**Sonic Vortex Enclosure -** The Sonic Vortex Enclosure is a tuned, sealed enclosure that captures driver backside air compression and redirects air movement to the fins, via the Sonic Vortex Airgate.<br> |
| [17.1] an enclosure housing defining an internal volume with a speaker opening at a first end thereof, the speaker opening being configured to receive a speaker therein, | Defendants' spec sheet discloses (Ex. E, p. 2) the following:<br>**Sonic Vortex Speaker -** Innovative speaker design that produces great sound in a patented enclosure. …Sonic Vortex speakers assure consistent performance in stereo and multi-channel systems…<br><br>Captured, compressed air from driver movement travels through the fins encircled by the Sonic |

| | |
|---|---|
| | Vortex Enclosure. The captured air gets redirected, preventing sound bleed to an adjacent room.<br><br> |
| [17.2] the enclosure housing having an inner surface facing the internal volume and an outer surface, the enclosure further defining at least one port communicating between the internal volume and the outer surface, the at least one port extending between the inner and outer surfaces along a port length that is greater than a maximum housing thickness between the inner and outer surfaces; | Defendants' spec sheet discloses (Ex. E, p. 2) the following:<br>**Sonic Vortex Enclosure -** The Sonic Vortex Enclosure is a tuned, sealed enclosure that captures driver backside air compression and redirects air movement to the fins, via the Sonic Vortex Airgate.<br>**Sonic Vortex Airgate -** The Vortex Airgate is the eye of the storm. Driver backside air compression passes through the tuned port (hole in the middle) and gets separated into multiple ported transmission lines (fins).<br>**Sonic Vortex Fins -** The Fins are encircled by and sealed to the inside of the Enclosure.<br>These air channels are specially tuned for length and volume to perfectly neutralize air pressure, balancing energy transfer to the external cabinet, eliminating external vibration.<br>**Sonic Vortex Dispersion Ports -** The redirected air from driver movement exits the front ported enclosure at multiple positions….<br><br><br><br>The captured air travels through the fins and exits out of the ports on the front of the enclosure…. |

| | |
|---|---|
| |  |
| [17.3] wherein the at least one port includes a first port section, extending from an inlet plenum towards a perimeter of the enclosure housing between the inner and outer surfaces and first port section walls at a second end of the internal volume opposite the first end, and |  |
| [17.4] a second port section, extending between the inner and outer surfaces from the first port section at the perimeter, winding at least partially around a perimeter of the enclosure housing toward the outer surface; |  |
| [17.5] and wherein a diameter of the inlet plenum is greater than a distance between the first port section walls. |  |

| Claim 18 | IPLCR4-BB DUAL 4" IN WALL LCR 2-WAY PANCAKE speakers |
|---|---|
| [18.0] The audio speaker enclosure of claim 17, wherein the at least one port comprises a plurality of ports. |  |

| Claim 19 | IPLCR4-BB DUAL 4" IN WALL LCR 2-WAY PANCAKE speakers |
|---|---|

22

| [19.0] The audio speaker enclosure of claim 17, wherein the at least one port has an outlet at the first end. |  |
| --- | --- |

| Claim 20 | IPLCR4-BB DUAL 4" IN WALL LCR 2-WAY PANCAKE speakers |
| --- | --- |
| [20.0] The audio speaker enclosure of claim 17, wherein the audio speaker enclosure further includes an end plate arranged between the internal volume and the inlet plenum at the second end, the end plate having a central opening communicating between the internal volume and the inlet plenum and at least one perimetric opening communicating between the first port section and the second port section. |  |

| Claim 21 | IPLCR4-BB DUAL 4" IN WALL LCR 2-WAY PANCAKE speakers |
| --- | --- |
| [21.0] The audio speaker of claim 17, wherein the audio speaker enclosure further includes an end cap arranged at the first end surrounding the speaker opening and bridging the inner and outer surfaces. |  |

| Claim 22 | IPLCR4-BB DUAL 4" IN WALL LCR 2-WAY PANCAKE speakers |
| --- | --- |
| [22.0] The audio speaker of claim 21, wherein the end cap defines an outlet for the at least one port. |  |

| Claim 23 | IPLCR4-BB DUAL 4" IN WALL LCR 2-WAY PANCAKE speakers |
| --- | --- |

| [23.0] The audio speaker of claim 21, wherein the end cap includes at least one pivotable ceiling mount support. |  |
| | [The green tabs in the pictures are the pivotable ceiling mount supports.] |

52.     All of the accused products include the same elements and features of the IPLCR4-BB DUAL 4" IN WALL LCR 2-WAY PANCAKE speakers identified in the above claim chart, and therefore infringe the claims of the '676 patent for these same reasons. As such, the above claim chart is representative of all of the accused products.

53.     Defendants have made, used, imported, offered for sale and/or sold and have transported or caused to be transported the accused products within this judicial district, the State of Illinois, and elsewhere nationwide and worldwide, including through one or more dealers within this judicial district.

54.     Defendants intentionally and willfully have and continue to manufacture, import, use, offer for sale and/or sell the accused infringing products, despite having actual knowledge of the '676 patent.

55.     Defendants have been and still are infringing the '676 patent in violation of 35 U.S.C. §271 by importing, making, using, offering for sale and/or selling in the United States the accused products embodying the patented invention.

56.     Plaintiffs has given notice of the infringement to Defendants, at least in the manner required by 35 U.S.C. §287(a), through the letter attached hereto as <u>Exhibit G</u>, and/or by way of this Complaint.

57.     Defendants' actions constitute knowing and willful infringement of the '676 patent.

58.     As a result of Defendants' infringement, Plaintiffs have been and, unless restrained by this Court, will continue to be irreparably harmed, damaged and injured.

59.     This is an exceptional case pursuant to 35 U.S.C. §285.

60.     Accordingly, Plaintiffs pray for the relief requested below.

## COUNT II

### Federal Trademark Infringement of the Sonic Vortex Mark

61.     Plaintiffs repeat and reallege paragraphs 1-60 as though fully stated herein.

62.     Without Plaintiffs' permission, Defendants have unlawfully used and/or continue to unlawfully use the Sonic Vortex mark for the same goods as those identified for Plaintiffs' Sonic Vortex mark, within Illinois and this judicial district, and elsewhere.  A screenshot of the homepage of Defendants' website http://beale-streetaudio.com/ showing an example of their infringing use is attached as Exhibit I.

63.     Defendants' infringing use of the Sonic Vortex mark has been intentional, willful, deliberate, unlawful and in bad faith, and has damaged Plaintiffs and the Sonic Vortex mark in Illinois and within this judicial district and elsewhere.  By providing the same goods using the same Sonic Vortex mark, Defendants are unlawfully and willfully infringing upon and/or violating Plaintiffs' rights and are otherwise unfairly competing with Plaintiffs.  Defendants are unlawfully taking full advantage of, and are misappropriating the goodwill of Plaintiffs' Sonic Vortex mark, thereby causing a likelihood of confusion, mistake, or deception to customers, the speaker industry and the public at large, and depriving Plaintiffs of their undiluted right to the Sonic Vortex mark and the resulting goodwill therefrom, and is further disparaging and

damaging Plaintiffs and their goodwill, and interfering with Plaintiffs' prospective business advantage.

64.     The use by Defendants of the Sonic Vortex mark for speaker products dilutes the distinctiveness of and damages the Sonic Vortex mark, and further is likely to confuse or deceive customers, consumers, industry personnel and the general public as to the source of Defendants' goods, and/or as to the sponsorship, affiliation and/or connection with Plaintiffs, and further, has and will continue to create the impression that Plaintiffs are responsible for the quality of the goods and services offered or provided by Defendants when Plaintiffs are not.

65.     Defendants have willfully infringed upon Plaintiffs' trademark rights in Illinois, this judicial district and elsewhere in violation of 15 U.S.C. §1114.

66.     Defendants' adoption and use of the Sonic Vortex mark for the same goods as those identified for Plaintiffs' Sonic Vortex mark constitutes willful trademark infringement, and constitutes the use of a counterfeit mark in connection with the sale, offering for sale, or distribution of goods under 15 U.S.C. §1117.

67.     Plaintiffs request this Court to declare that Defendant is a willful infringer under 15 U.S.C. §1117 and to award to Plaintiffs (1) Defendants' profits, (2) any damages sustained by the Plaintiffs, and (3) the costs of this action, and enter judgment for three times such profits or damages, whichever amount is greater, together with reasonable attorney's fees a result of said willful infringement, and further award statutory damages for the willful use of a counterfeit mark for $2,000,000 per counterfeit mark per type of goods sold, offered for sale, or distributed.

68.     Accordingly, Plaintiffs pray for the relief requested below.

## COUNT III

## Common Law Trademark Infringement of the Sonic Vortex Mark

69.     Plaintiffs repeat and reallege paragraphs 1-68 as though fully stated herein.

70.     Defendants' use of the Sonic Vortex mark or confusingly similar variation for speaker products creates a likelihood of confusion and deception in the public mind as to the source or affiliation of the goods and further creates the wrongful impression that Plaintiffs are responsible for the quality and rendering of Defendants' goods when, in fact, they are not.

71.     Defendant' acts have been intentionally committed and have caused and, unless enjoined by this Court, will continue to cause irreparable harm, damage and injury to Plaintiffs in Illinois, this judicial district and elsewhere, in violation of the Common Law.

72.     Accordingly, Plaintiffs pray for the relief requested below.

## COUNT IV

### Federal Unfair Competition 15 U.S.C. §1125 (a)(1)(A)

73.     Plaintiffs repeat and reallege paragraphs 1-72 as though fully stated herein.

74.     Defendants' unlawful use of the Sonic Vortex mark and/or Defendants statements that they have patents awarded and patents pending for the same goods as those identified for Plaintiffs' Sonic Vortex mark and/or the '676 patent has and/or is likely to cause confusion among customers, consumers, industry personnel and/or the public and leads them to believe that the goods advertised, offered and provided by Defendants originate from Plaintiffs or that Plaintiffs have licensed, approved or somehow sponsored Defendants' goods, or that Plaintiffs are in some way related or connected with Defendants, when in fact no such relationship currently exists.

75.     Defendants' goods are marketed, offered and provided in the same, overlapping and/or close geographic locations to the same prospective customers and decision makers who would purchase or use Plaintiffs' and Defendants' respective goods.

76.     Defendants' conduct in adopting and using the Sonic Vortex mark for the same goods was and is totally unauthorized and constitutes unfair competition with Plaintiffs in Illinois, this judicial district and elsewhere, and is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiffs, or as to the origin, sponsorship, or approval of Defendants' goods, or commercial activities, or to benefit from Plaintiffs' goodwill, in violation of §43(a) of the Lanham Act.

77.     By reason of Defendants' acts, Plaintiffs' rights under 15 U.S.C. §1125(a)(1)(A) have been violated.  Defendants' acts have caused, and unless restrained by this Court, will continue to cause irreparable harm, damage and injury to Plaintiffs' business and goodwill in Illinois, within this judicial district and elsewhere.

78.     Plaintiffs have no adequate remedy at law.

79.     Accordingly, Plaintiffs pray for the relief requested below.

## COUNT V

## Federal Unfair Competition 15 U.S.C. §1125 (a)(1)(B)

80.     Plaintiffs repeat and reallege paragraphs 1-79 as though fully stated herein.

81.     Defendants' unlawful use of the Sonic Vortex mark and/or Defendants' statements that they have patents awarded and patents pending for the same goods as those identified for Plaintiffs' Sonic Vortex mark and/or the '676 patent, in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of Defendants' goods or commercial activities, which has and/or is damaging the business interests of Plaintiffs in Illinois, within this judicial district and elsewhere.

82.     Defendants' false or misleading description or representation of fact in commercial advertising or promotion has damaged and continues to damage Plaintiffs in Illinois,

within this judicial district, and elsewhere, and/or unjustly enrich Defendants, in violation of §43(a) of the Lanham Act.

83.     By reason of Defendants' acts, Plaintiffs' rights under 15 U.S.C. §1125(a)(1)(B) have been violated.  Defendants' acts have caused, and unless restrained by this Court, will continue to cause irreparable harm, damage and injury to Plaintiffs' business and goodwill in Illinois and this judicial district.

84.     Plaintiffs have no adequate remedy at law.

85.     Accordingly, Plaintiffs pray for the relief requested below.

## COUNT VI

## Unfair Competition under the Common Law

86.     Plaintiffs repeat and reallege paragraphs 1-85 as though fully stated herein.

87.     Defendants' unlawful use of the Sonic Vortex mark and/or Defendants' statements that they have patents awarded and patents pending for the same goods as those identified for Plaintiffs' Sonic Vortex mark and/or the '676 patent, and Defendants' unauthorized use of the '676 patent, has and is likely to continue to injure Plaintiffs and their business in Illinois, within this judicial district and elsewhere, and to damage and dilute the distinctive quality of Plaintiffs' Sonic Vortex mark in violation of the Common Law.

88.     Defendants have unfairly competed with Plaintiffs by the acts complained of, have done so intentionally, and have caused, and unless restrained and enjoined by this Court, will continue to cause irreparable harm, damage and injury to Plaintiffs in Illinois, within this judicial district and elsewhere.

89.     Plaintiffs have no adequate remedy at law.

90.     Accordingly, Plaintiffs pray for the relief requested below.

## COUNT VII

### Deceptive Trade Practices (815 ILCS 510/)

91.     Plaintiffs repeat and reallege paragraphs 1-90 as though fully stated herein.

92.     Defendants' unlawful use of the Sonic Vortex mark and/or Defendants' statements that they have patents awarded and patents pending for the same goods as those identified for Plaintiffs' Sonic Vortex mark and/or the '676 patent, and Defendants' unauthorized use and infringement of the '676 patent has and is likely to continue to injure Plaintiffs and their business in Illinois and this judicial district, and to damage and dilute the distinctive quality of Plaintiffs' Sonic Vortex mark in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510 *et seq*.

93.     Defendants have unfairly competed with Plaintiffs by the acts complained of, have done so intentionally, and have caused, and unless restrained and enjoined by this Court, will continue to cause irreparable harm, damage and injury to Plaintiffs in Illinois, within this judicial district and elsewhere.

94.     Accordingly, Plaintiffs pray for the relief requested below.

**WHEREFORE,** Plaintiffs pray that this Court enter judgment against Defendants as follows:

A.  That the '676 patent is valid and enforceable;

B.  That Defendants have been and are infringing the '676 patent pursuant to 35 U.S.C. §271;

C.  That Defendants, their officers, agents, servants, employees, and others acting for, or on behalf of, or in concert with Defendants, be preliminarily and permanently enjoined from activities infringing upon the '676 patent;

30

D.  That Defendants' infringement of the '676 patent has been willful;

E.   That this Court award damages adequate to compensate Plaintiffs for Defendants' infringement of the '676 patent pursuant to 35 U.S.C. §284;

F.  That this Court award treble damages pursuant to 35 U.S.C. §284;

G.  That this is an exceptional case pursuant to 35 U.S.C. §285;

H.  That this Court award reasonable attorneys' fees pursuant to 35 U.S.C. §285;

I.  That this Court award costs and interest;

J.  That this Court issue an order requiring Defendants and all those in privy or concert therewith to deliver up for destruction all infringing products, including containers, labels, signs, domain names, websites, packages, wrappers, articles and promotional and advertising materials of any kind, and any machinery, molds, tooling, apparatuses and/or devices used to make products under the '676 patent, in their possession or under their control relating to the infringing products;

K.    That the Sonic Vortex trademark is valid and enforceable;

L.    That this Court preliminarily and permanently enjoin Defendants from using the Sonic Vortex mark, and from diluting the distinctiveness thereof, and otherwise competing unfairly with Plaintiffs and profiting therefrom;

M.    That this Court award to Plaintiffs such damages as Plaintiffs' have sustained in consequence of Defendants' infringement of the Sonic Vortex mark and said other unlawful acts and activities, including but not limited to Defendants' profits, and to account for all gains, profits and advantages derived by Defendants therefrom, and to award appropriate exemplary damages so as to set an example that the willful acts of Defendants cannot be condoned;

N.     That this Court award to Plaintiffs three times the amount of (1) Defendants' profits, (2) any damages sustained by Plaintiffs, and (3) the costs of this action, pursuant to 15 U.S.C. §1117(a), and further that this Court hold that this is an exception case and award Plaintiffs their reasonable attorneys' fees under 15 U.S.C. §1117(a), or any other applicable laws;

O.     That this Court award to Plaintiffs three times such profits or damages, whichever is greater, together with reasonable attorneys' fees under 15 U.S.C. §1117(b), or any other applicable laws, in view of Defendants' continued and ongoing intentional infringement and unlawful acts;

P.     That this Court award to Plaintiffs statutory damages in the amount of $200,000 pursuant to 15 U.S.C. §1117(c)(1), and further find that Defendants' continued and ongoing use of the Sonic Vortex mark is willful, and award to Plaintiffs statutory damages in the amount of $2,000,000 per counterfeit mark per type of goods sold, offered for sale, or distributed pursuant to 15 U.S.C. §1117(c)(2);

Q.     That this Court hold that Defendants have willfully engaged in deceptive trade practices and award Plaintiffs their costs and attorneys' fees under 815 ILCS 510/3;

R.     That this Court issue an order requiring Defendants and all those in privity or concert therewith to deliver up for forfeiture, cancellation and/or destruction all labels, signs, packages, wrappers, articles, domain names, websites, metatags, keywords and promotional and advertising materials of any kind in their possession or under their control bearing the Sonic Vortex mark, or any confusingly similar variation thereof;

S.     That all costs and expenses in this action, including reasonable attorneys' fees as provided for, *inter alia*, by 15 U.S.C. §§1117 and 1125, or any other applicable laws, and

appropriate interest on all damages sustained by Plaintiffs, be taxed in favor of Plaintiffs and against Defendants and that Plaintiffs shall have judgment and execution thereof against Defendants; and

T.  That this Court grant all other relief as this Court may deem just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury as to all issues so triable in this action.

Respectfully submitted,

**VANCO INTERNATIONAL LLC**

Date:  February 1, 2017          By:    s/James V. Daffada_____
*One of the Attorneys for Plaintiff Vanco*

**JDA TECHNOLOGIES LLC**

Date:  February 1, 2017          By:    s/Roger Masson_____ _____
*One of the Attorneys for Plaintiff JDA*

James V. Daffada
IL Bar No. 6197817
Leinenweber Baroni & Daffada LLC
120 North LaSalle Street, Suite 2000
Chicago, Illinois 60602
(847) 251-4091
jim@ilesq.com

Charles T. Riggs Jr.
IL Bar No. 6225931
Law Office of Charles T. Riggs Jr.
551 Forest Ave.
River Forest, IL 60305
(708) 828-6130
riggs@riggs.pro

Attorneys for Vanco International LLC

Jeffrey S. Boyles, Esq.
ALLEN, DYER, DOPPELT, MILBRATH & GILCHRIST, P.A.
255 South Orange Avenue, Suite 1401
Orlando, FL 32801
(407)-841-2330
jboyles@addmg.com

Attorney for JDA Technologies LLC

Joel D. Bertocchi
IL Bar No. 6227292
Roger Masson
IL Bar No. 6283475
Hinshaw & Culbertson LLP
222 N. LaSalle Street, Suite 300, Chicago, IL, 60601
Tel: 312-704-3130
Fax: 312-704-3001
JBertocchi@hinshawlaw.com
rmasson@hinshawlaw.com

Local counsel for JDA Technologies LLC